CHARLES A. BONNER, ESQ. SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
LAW OFFICES OF BONNER & BONNER
475 GATE FIVE RD, SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

JESSE P. RYDER, ESQ.
(Bar No. 511300) Pro Hac Vice Forthcoming
RYDER LAW FIRM
6739 Myers Road
East Syracuse, New York 13057
ryderlawfirm@gmail.com
Phone: 315-382-3617
Fax: 315-295-2502

ATTORNEYS FOR MR. PATRICK JURDON

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK JURDON<br><br>                    PLAINTIFF,<br><br>          vs.<br><br>CITY OF HANFORD; CITY OF HANFORD POLICE DEPARTMENT; PARKER SEVER, *In His Individual and Official Capacity;* GABRIEL JIMENEZ, *In His Individual Capacity;* JAMES LUTZ, *In His Individual Capacity;* KARL ANDERSON, *In His Individual Capacity;* JAMES EDLUND, *In His Individual Capacity;* AND DOES 1 THROUGH 50, INCLUSIVE,<br><br>                    DEFENDANTS. | Case No.: 1:23-cv-01695-NODJ-SKO<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>FEDERAL CLAIMS<br><br>1.  Fourteenth Amendment Equal Protection/Hostile Work Environment in Violation of 42 U.S.C. § 1983<br><br>2.  Retaliation for Exercising First Amendment Right To Free Speech In Violation of 42 U.S.C. § 1983<br><br>3.  Municipal Liability in Violation of 42 U.S.C. § 1983<br><br>4.  Employment Discrimination Violation of 42 U.S.C. § 1981<br><br>5.  Disparate Treatment In Violation of Title VII of the Civil Rights Act<br><br>6.  Retaliation in Violation of Title VII of the Civil Rights Act |

**STATE CLAIMS**

7. Failure to Prevent Race Discrimination in Violation of Cal. Gov't Code §12940(k)

8. Hostile Work Environment on the Basis of Race in Violation of Cal. Gov't Code §12940(J)(1)

9. Retaliation in Violation of Cal. Gov't Code § 1102.5(b)

10. Violation of Cal. Gov't § 8547 ("Whistleblower Protection Act)

11. Interference with Rights in Violation of Cal. Civ. Code 52.1 (Bane Act)

12. Intentional Infliction of Emotional Distress

**JURY TRIAL DEMANDED**

FIRST AMENDED COMPLAINT FOR DAMAGES

2

**INTRODUCTION**

1.      This case invokes the very essence of the enduring poison that holds fast in the very institutions charged with ensuring that the rights provided and afforded to all citizens are equally guaranteed and protected. Here police officer, Plaintiff PATRICK JURDON, for attempting to hold members of his department accountable for misdeeds by speaking out, was forced to incur a protracted campaign of hostility, retaliation and disparate treatment founded upon racial and discriminatory animus by his own department, Defendant HANFORD POLICE DEPARTMENT.

2.      Thus, on account of the harms OFFICER JURDON incurred as a result of Defendants' blatant and incorrigible disregard of the rights guaranteed him and enshrined in the US Constitution and the laws of the State of California, OFFICER JURDON brings the following complaint as a means of not only asserting his own dignity and attaining justice for himself, but for all the police officers who, upon feeling called to serve their communities, can do so  upon equal terms and conditions such that the rights and values that United States aspires to will one day finally and actually come to fruition.

**PARTIES**

3.      PATRICK JURDON ("OFFICER JURDON") is a citizen of the United States and is a resident of the County of Kings, California. Mr. Jurdon was, at all relevant times, employed by the City of Hanford as a police officer for Hanford's Police Department, County of Kings, California.

4.      DEFENDANT PARKER SEVER ("SEVER & CHIEF OF POLICE SEVER"), sued herein *In His Individual Capacity* is an individual residing in the County of Kings, California, and is employed by the Hanford Police Department.

5.      DEFENDANT Gabriel Jimenez ("Jimenez"), sued herein *In His Individual Capacity,* is an individual residing in the County of Kings, California, and is employed by the Hanford Police Department.

6.      DEFENDANT James Lutz ("Lutz"), sued herein *In His Individual Capacity,* is an individual residing in the County of Kings, California, and is employed by the Hanford Police Department.

7.      DEFENDANT Karl Anderson ("Anderson"), sued herein *In His Individual Capacity,* is an individual residing in the County of Kings, California, and is employed by the Hanford Police Department.

FIRST AMENDED COMPLAINT FOR DAMAGES
3

8.     DEFENDANT James Edlund ("Edlund"), sued herein *In His Individual Capacity,* is an individual residing in the County of Kings, California, and is employed by the Hanford Police Department.

9.     OFFICER JURDON is informed, believes, and based thereon, alleges that Defendant CITY OF HANFORD ("CITY OF HANFORD") is a governmental entity in the State of California, with a principal place of business at 315-321 North Douty Street, Hanford, California 93230.

10.     OFFICER JURDON is informed, believes, and based thereon, alleges that Defendant CITY OF HANFORD POLICE DEPARTMENT ("HANFORD POLICE DEPARTMENT") is a governmental entity of and for the County of Kings, with a principal place of business at 425 N. Irwin Street, Hanford, California 93230.

11.     The true names, identities and/or capacities of the individuals sued herein as DOES 1 through 50, inclusive, are currently unknown to OFFICER JURDON, who, therefore, sues said DOES by such fictitious names. When the true name, identities, and/or capacities of these DOES are known, OFFICER JURDON will seek leave of the Court to amend this Complaint.

12.     OFFICER JURDON is informed, believes, and based thereon, alleges that DEFENDANTS, and each of them, were the employees, agents, servants, supervisors, managers, officers and/or directors of each and every other DEFENDANT, and in doing the things alleged herein, were acting within the course, scope and authority of such agency, supervision and/or employment.

13.     OFFICER JURDON is further informed, believes, and based thereon, alleges that the acts, omissions, and things complained herein were done by the agents, servants, employees, supervisors, manages, officers, and/or directors of Defendants, and each of them, and were authorized, directed, approved and ratified by Defendants.

**RESPONDEAT SUPERIOR**

14.     All of the described conduct, acts, and failures to act are attributed to agents and managing agents of CITY OF HANFORD. Said acts, conduct and failures to act were within the scope of such agency and employment. At all times relevant herein, each participant was acting within the course and scope of his or her employment and agency. Further, at all relevant times each DEFENDANT

was acting in agreement, and with the endorsement, ratification and consent of each of the other DEFENDANTS.

**RATIFICATION, ADOPTION AND AUTHORIZATION**

15.     Defendant CITY OF HANFORD and its managing agents, in both their individual and official capacities, ratified, adopted and authorized each of the DEFENDANTS and managing agents' illegal conduct. Defendant CITY OF HANFORD and its managing agents, in both their individual and official capacities, knew, or should have known, that Defendant and managing agents were engaging in illegal conduct and had been warned, informed, and given prior notice of the illegal conduct.

16.     It is well established that when an employer ratifies the tortious conduct of an employee, he or she becomes "liable for the employee's wrongful conduct as a joint participant. An employer who fails to discipline an employee after being informed of that employee's improper conduct can be deemed to have ratified that conduct. According to the court in Iverson, supra, if an employer is informed that an employee has committed an intentional tort and nevertheless declines to "censure, criticize, suspend or discharge" that employee, a claim can be made for ratification.

17.     Ratification is the voluntary election by a person to adopt in some manner as his own, an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. A purported agent's act may be adopted expressly, or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.

18.     At all relevant times alleged herein, Defendant CITY OF HANFORD and HANFORD POLICE DEPARTMENT and its managing agents, in both their individual and official capacities, had actual and constructive knowledge of Defendants,' and managing agents' illegal conduct and has endorsed, ratified, and encouraged Defendants' illegal behavior. Defendant CITY OF HANFORD and HANFORD POLICE DEPARTMENT, and its managing agents, in both their individual and official capacities, failed to take any corrective action to protect employees and the public from Defendants' illegal behavior.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

19.     OFFICER JURDON has affirmatively filed an administrative "Tort Claim" with the Clerk of the Board of Supervisors of Defendant CITY OF HANFORD. OFFICER JURDON has additionally filed a claim with the Equal Employment Opportunity Commission (EEOC) and the Department of Fair Employment and Housing (DFEH).  OFFICER JURDON received a right-to-sue letter from the EEOC and is timely filing this amended complaint.

## WORKERS' COMPENSATION EXCLUSIVITY DOES NOT APPLY

20.     Each and every wrongful, injurious, intentional, willful, discriminatory, harassing act and failure to act, by Defendants were not normal incidents of employment and were outside the scope of the employment bargain. Thus, workers' compensation exclusive remedy set forth in California Labor Code § 3600 et seq. will not preempt, nor bar OFFICER JURDON's right to recover for damages set forth herein.

## STATEMENT OF FACTS

21.     OFFICER JURDON is and has been employed as a police officer with the HANFORD POLICE DEPARTMENT between the years of 2017 and the present, during which time Defendants' campaign of hostility and harassment culminated in multiple disciplinary actions against OFFICER JURDON. Before OFFICER JURDON complained about racist practices and excessive force, as set forth below, he enjoyed a stellar reputation as a police officer and received multiple commendations and above-average reviews.

22.     Defendants have directly targeted OFFICER JURDON through retaliation, including racially charged retaliation, to the point that OFFICER JURDON was forced to incur and endure an unrelenting and systematic campaign of discrimination, denigration, hostility and demeaning work environment, as well as a blatant disregard of the rights afforded and protected him under both federal constitutional law and California state law.

**PROTECTED ACTIVITY**

23.     Around October 2020, OFFICER JURDON reported two officers for misconduct in regards to their creating a racist meme.

24.     Around January 2021, OFFICER JURDON reported Captain Anderson for misconduct during a Secret Service detail.

25.     In or about April or May of 2021, Officer Jurdon complained to HR of an excessive force incident in which Sergeant Taylor Lopes pushed an individual approximately 10 feet across the alley, causing this person to fall back. As the individual fell back, Hanford Police Department Officer Rivera administered a kick or a foot stomp to this person's head.

26.     After OFFICER JURDON made the report, these officers photo-shopped OFFICER JURDON'S face onto the body of Derek Chauvin while he was kneeling on George Floyd. OFFICER JURDON was also subjected to witnessing racial discrimination and hostility directed towards another African American officer, Jason Stingley by CHIEF SEVER and other officers within the Department.

**ACT OF RETALIATION AND HARASSMENT**

27.     In approximately 2021, OFFICER JURDON received a documented counseling for the patrol vehicle he was using being dusty. This unit was a pool car, and he was not the only person using the vehicle. During the counseling, Sgt. Allen told him the counseling came from Lt. Lutz directly.

28.     In March/April 2022, Sgt. Jimenez took OFFICER JURDON'S take-home car when he transferred to dispatch. Sgt. Jimenez waited until 1645 hours on the last day of the work week and advised that he was taking the vehicle. When OFFICER JURDON asked Sgt. Jimenez, what OFFICER JURDON was supposed to drive, Sgt. Jimenez laughed and told him: "Your personal car I guess."  When OFFICER JURDON asked Sgt. Jimenez, under what policy Sgt. Jimenez said he didn't know. OFFICER JURDON then advised Sgt. Jimenez the policy affords him take home privileges as an officer. Sgt. Jimenez replied that he was not an officer. This matter was ultimately brought to the attention of Lt. Huddleston, who handled the matter and later advised OFFICER JURDON he would be getting the take-home vehicle back. OFFICER JURDON was advised the keys would be waiting for him on his desk; however, upon checking his desk, the keys were not there. It took approximately three days before OFFICER JURDON received his keys back.

29.     On September 1, 2022, Sgt. Jimenez issued OFFICER JURDON a documented counseling for being "rude and discourteous." The counseling was vague and did not specify exactly what

OFFICER JURDON said or did. Furthermore, OFFICER JURDON asked why the counseling was being documented since OFFICER JURDON had never received prior notice of this alleged behavior. Past practice has always been for officers to be advised informally through undocumented counseling of their conduct prior to elevating towards formal documentation. Sgt. Jimenez advised OFFICER JURDON it was a new thing the department was doing. Sgt. Jimenez also advised OFFICER JURDON that Lt. Lutz had taken offense to the fact he used his headset often. When asked if there was an issue with his work performance caused by using the headset Sgt. Jimenez advised OFFICER JURDON, he did not have a problem with his work performance. OFFICER JURDEON asked Sgt. Jimenez if Lt. Lutz mentioned any other member of the unit using their headset and he said it was just him. After the counseling was over, he asked for a copy and Sgt. Jimenez told him it was in my "sergeant's folder." later it was discovered the sergeant's folder no longer exits.

30.    Approximately two weeks after the counseling Sgt. Jimenez came into the room at the start of shift and said "good morning cock sucker" to OFFICER JURDON. Detective Fogal was sitting nearby and heard this statement.

31.    On September 29, 2022, OFFICER JURDON attempted to "grieve" the aforementioned counseling. He was told by Sgt. Jimenez he needed to go through the chain of command and would have to speak with Lt. Lutz. HPOA President B. McCreary was present. During this conversation with Lt. Lutz, he stated OFFICER JURDON was acting as if he did not want to take accountability for his actions. OFFICER JURDON argued he could not take accountability for this incident when he did not know what specifically he did in the first place. Lt. Lutz then stated: "if he wanted those answers, he would open an internal affairs investigation into it and that he was doing him a favor by keeping it at the level of a documented counseling." OFFICER JURDON advised Lt. Lutz he felt he was being held to a higher standard than other officers who have made extremely disparaging remarks without any disciplinary action. Lt. Lutz replied in the following context; "what do you want to do go around and document everything that is said around here." Lt. Lutz spoke in a demeaning manner during this conversation and ultimately told OFFICER JURDON he needed to speak further with Sgt. Jimenez if I wanted more information.

FIRST AMENDED COMPLAINT FOR DAMAGES

32.     OFFICER JURDON then contacted Sgt. Jimenez and asked for the specifics regarding the counseling. Sgt. Jimenez stated he knew what he did wrong and how he spoke with people. OFFICER JURDON again responded he was unaware of the specifics while Sgt. Jimenez began raising his voice and repeatedly said he knew what he did wrong. Sgt. Jimenez also stated he was doing him a favor by keeping it at a documented counseling.

33.     On October 4, 2022, Lt. Lutz changed the time cards for the detective's unit regarding a previous range training. This change in the schedule took away the drive time to the range and also hold over time OFFICER JURDON spent prior to going to the range. This matter was ultimately brought up during a labor relations meeting and resolved.

34.     On November 3, 2022, at approximately 1517 hours, Sgt. Jimenez called OFFICER JURDON into his office. Upon arriving, he noticed Sgt. Vallin was sitting in the corner. Sgt. Jimenez told him to come in, close the door, and that "you aren't going to like this." Sgt. Jimenez then presented him with another documented counseling regarding personal communication devices and efficiency. When he asked Sgt. Jimenez why Sgt. Vallin was present, he said he conducts all his counseling in this matter. OFFICER JURDON told him that was incorrect because during the last counseling Sgt. Vallin was not present. Sgt. Jimenez then stated it was because no one else was available during the last counseling.

35.     After reading through the counseling Sgt. Jimenez asked OFFICER JURDON if the counseling was true and accurate to which OFFICER JURDON replied it was not. OFFICER JURDON noted two inaccuracies and factual misrepresentations. First Sgt. Jimenez said he was playing a video game on the work computer while playing a video game on his phone. This is a flat out lie. OFFICER JURDON has never utilized any work computer to play video games. This occurred during a break OFFICER JURDON was taking which is afforded under HPD policy and California labor laws.

36.     The second part of this same counseling documented an incident where OFFICER JURDON allegedly failed to follow up with a citizen regarding her picking up a cellular phone which belonged to her deceased son. The cell phone was taken as evidence in the case. Sgt. Jimenez alleged OFFICER JURDON did not follow up with the citizen and did not contact evidence. Sgt. Jimenez then presented

OFFICER JURDON with an email claiming he spoke with the citizen who stated that she had in fact spoken with him and was advised he was waiting on documentation (autopsy report) in order to close the case and return the phone. OFFICER JURDON did in fact speak with the citizen and he did in fact follow up with evidence who advised him they could not release the property until the case was closed. He was further advised that he could not close the case until he received the autopsy report which was estimated to be a year out. During the entire counseling, Sgt. Jimenez failed to give OFFICER JURDON a chance to defend himself, refused to listen to his responses and refused to correct the counseling. Towards the end of the counseling OFFICER JURDON asked Sgt. Jimenez if he was going to receive a copy of this counseling due to Sgt. Jimenez previously stating the counseling would be in his sergeant's folder. Sgt. Vallin offered to make copies for him and he walked away. After Sgt. Vallin left, Sgt. Jimenez asked OFFICER JURDON why he was looking at him. He asked him what he meant and he replied, "you look like you want to do something to me right now." This comment was unprofessional, extremely out of line and was an attempt to provoke OFFICER JURDON.

37.    OFFICER JURDON has been in the detective's unit off and on for approximately sixteen months. During that time period after he complained he has not been sent to one investigative related training course which is an automatic requirement. OFFICER JURDON has not been sent to any further training courses while the other remaining tenured members have been sent to several. He has made several requests and inquiries into going to further training.

38.    The repeated and baseless disciplines brought against OFFICER JURDON were a direct retaliation for making complaints against Sgt. Jimenez for calling him a cock sucker, making a complaint about the racially charged meme whereby his face was photo-shopped onto Derek Chauvin's body, making a complaint about a savage attack on a citizen by another City of Hanford Police Officer and other incidents whereby OFFICER JURDON made complaints to management for violations of police department policies.

//

//

**FIRST CAUSE OF ACTION**
**Fourteenth Amendment Equal Protection/Hostile Work Environment**
**In Violation of 42 U.S.C. § 1983**
(Against Sever, Jimenez, Lutz, Anderson, Edlund and Does 1-50)

39.     OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

40.     The Fourteenth Amendment of the United States Constitution provides important rights that are applicable to the States: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

41.     Claims for a hostile work environment are based on a violation of the Fourteenth Amendment's Equal Protection Clause and may serve as an independent source for a Section 1983 claim. The Equal Protection clause of the Fourteenth Amendment confers a federal constitutional right to be free from racial discrimination at the hands of governmental actors." To prevail on a hostile work environment claim, a plaintiff must show that her "workplace permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

42.     As specifically alleged above, OFFICER JURDON, a police officer employed by the CITY OF HANFORD and a member of the HANFORD POLICE DEPARTMENT, was subjected to a concerted and unrelenting campaign of racially charged and discriminatory animus by fellow officers and fostered by supervisory staff of the HANFORD POLICE DEPARTMENT, Sever, Jimenez, Lutz, Anderson, Edlund and Does 1-50, such that it substantially altered the conditions of his employment to a degree of severity and pervasiveness that resulted in a hostile work environment. The actions and conduct of Sever, Jimenez, Lutz, Anderson, Edlund, and Does 1-50 cumulatively resulting in a hostile work environment has caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss

of future earnings and benefits, costs of suit, humiliation, embarrassment, and emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

43.     As to Defendants Sever, Jimenez, Lutz, Anderson, Edlund, and Does 1-50, as alleged herein, their individual and communal acts and conduct were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure OFFICER JURDON and to cause him mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to OFFICER JURDON and with the intent to injure, constituting oppression, fraud, and malice, entitling OFFICER JURDON to punitive damages against these individual Defendants only.

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

**SECOND CAUSE OF ACTION**
**Retaliation For Exercising Free Speech**
**In Violation of 42 U.S.C. § 1983**
(Against Sever, Jimenez, Lutz, Anderson, Edlund and Does 1-50)

44.     OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

45.     OFFICER JURDON brings this claim under federal statute 42 U.S.C. § 1983, which provides that any person or persons who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

46.     At all times herein, relevant Defendants Sever, Jimenez, Lutz, Anderson, Edlund, and Does 1-50 were acting under color of state law.

47.     The First Amendment of the United States Constitution states: "Congress shall make no law abridging the freedom of speech or the press." The First Amendment has been interpreted to apply to all government organizations in the United States. It applies to state and local governments through the operation of the Fourteenth Amendment Due Process Clause, which incorporates the protection of free speech of the First Amendment.

48.     Public employees have the right not to have the government restrict their speech based on the speech's viewpoint. OFFICER JURDON exercised his First Amendment rights when he communicated to the HANFORD POLICE DEPARTMENT and the CITY OF HANFORD the

despicable racially intolerant, discriminatory treatment and retaliation he was incurring at the hands of Defendant HANFORD POLICE OFFICERS Sever, Jimenez, Lutz, Anderson, Edlund and Does 1-50.

49.     The content of OFFICER JURDON's speech were matters of public concern, i.e., informing the HANFORD POLICE DEPARTMENT and the CITY OF HANFORD as to the racially intolerant conduct, the use of excessive force, and hostile work environment that was being perpetuated as a custom and practice within the HANFORD POLICE DEPARTMENT's ranks and the dire need for remedying such.

50.     Sever, Jimenez, Lutz, Anderson, Edlund, and Does 1-50 deprived OFFICER JURDON of his rights under the First Amendment when they subjected him to adverse employment actions, including excessive disciplinary actions, ridicule, and deprivation of benefits, such as trainings.

51.     The conduct of Sever, Jimenez, Lutz, Anderson, Edlund, and Does 1-50, and each of them, at all times relevant and as set forth above, constitutes violations under color of law of OFFICER JURDON's rights, privileges, and immunities guaranteed him by the First Amendment of the United States Constitution.

52.     The actions and conduct of Sever, Jimenez, Lutz, Anderson, Edlund, and Does 1-50 have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment and emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

53.     As to Defendants Sever, Jimenez, Lutz, Anderson, Edlund, and Does 1-50, the acts of these Respondents, as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure OFFICER JURDON and to cause him mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to OFFICER JURDON and with the intent to injure, constituting oppression, fraud, and malice, entitling OFFICER JURDON to punitive damages against these individual Defendants only.

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

FIRST AMENDED COMPLAINT FOR DAMAGES

**THIRD CAUSE OF ACTION**
**Municipal Liability**
**In Violation of 42 U.S.C. § 1983**

(Against City of Hanford, Hanford Police Department)

54.    OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

55.    Municipal liability under Section 1983 can be invoked where a municipality expresses "a policy of inaction and such inaction amounts to deliberate indifference to a plaintiff's constitutional rights and that the policy of inaction caused the violation where the municipality could have prevented the violation with the appropriate policy. A plaintiff must plead facts supporting a reasonable inference that the municipality was on actual or constructive notice that its inaction would likely result in a constitutional violation and that the inaction was "the result of a conscious or deliberate choice among various alternatives."

56.    Here, the CITY OF HANFORD was on notice that a culture of racial discriminatory conduct was permeating the HANFORD POLICE DEPARTMENT when OFFICER JURDON informed both the CITY OF HANFORD and the HANFORD POLICE DEPARTMENT of the racially charged hostility and harassment that he was enduring, excessive force used against a citizein by a fellow officer, and the retaliatory disciplines against him at the hands of CHIEF OF POLICE SEVER, and officers' Jimenez, Lutz, Anderson, Edlund and Does 1-50. Despite receiving a detailed account, neither the CITY OF HANFORD nor the HANFORD POLICE DEPARTMENT opened an investigation into Sever, Jimenez, Lutz, Anderson, Edlund, nor DOES' individual conduct, nor investigated OFFICER JURDON's allegations that the department was permeated by racial discriminatory animus and hostility. Thus, despite its knowledge, the CITY OF HANFORD and the HANFORD POLICE DEPARTMENT perpetuated a policy of inaction that, on account of said inaction, permitted and thereby condoned Sever, Jimenez, Lutz, Anderson, Edlund and Does to engage in a campaign of retaliation that resulted in sham investigations in order to substantiate OFFICER JURDON's disciplines and continual hostile work environment.

57.    Thus, the CITY OF HANFORD and the HANFORD POLICE DEPARTMENT's policy of inaction constituted a conscious choice, i.e., deliberate indifference to OFFICER JURDON's First

Amendment right to speak to constitutionally infirm conduct that was being perpetuated in the HANFORD POLICE DEPARTMENT, as well as JURDON's Fourteenth Amendment right to equal protection being most blatantly violated on account of the hostile working conditions he was faced to endure in the HANFORD POLICE DEPARTMENT and on account thereof, having to endure treatment, discipline, investigations and other adverse employment actions that his similarly situated colleagues were able to evade and avoid.

58.     Were the CITY OF HANFORD to enact and enforce policies to stem the HANFORD POLICE DEPARTMENT and its individual officers' blatant and unrelenting racial and discriminatory animus, use of excessive force by members of the department and retaliatory behavior the constitutional harms incurred by OFFICER JURDON, would not have occurred. Similarly, the CITY OF HANFORD was apprised that the HANFORD POLICE DEPARTMENT and its individual officers deployed their racial and discriminatory animus outside the precinct walls by engaging in discriminatory and racially motivated excessive force on the Latino citizenry of Hanford. See, for e.g., *Tafoya v. City of Hanford*, No. 1:20-cv-00010-LJO-SAB, 2020 U.S. Dist. LEXIS 9874, at *1 (E.D. Cal. 2020)(No. 1:20-cv-00010-LJO-SAB)(excessive force); *Hemphill v. City of Hanford Poilce Dep't*, No. 1:19-cv-01119-AWI-EPG, 2020 U.S. Dist. LEXIS 97599, at *1 (E.D. Cal. 2020)(1:15-cv-01513-SMS)(excessive force); Arellano v. City of Hanford, 2016 U.S. Dist. LEXIS 53123, at *1 (E.D. Cal. 2016)(1:15-cv-01513-SMS)(excessive force).

59.     Municipal liability can additionally be attached when a municipal official with final policymaking authority makes a deliberate choice to follow a course of action. A single decision by a municipal policymaker can, in appropriate circumstances, subject a municipality to liability under § 1983.

60.     Here, in engaging in conduct constituting racial, discriminatory and retaliatory animus directed towards  OFFICER JURDON, CHIEF OF POLICE SEVER, as the HANFORD POLICE DEPARTMENT's final policymaker relied upon his final policymaking authority to subject OFFICER JURDON to a sham investigations with the intent to lay the foundation to substantiate his termination. CHIEF OF POLICE SEVER's employed his final policymaking authority to retaliate against OFFICER JURDON on account of JURDON levying complaints against fellow officers with

the HANFORD POLICE DEPARTMENT in 2020 and throughout 2021. In wielding final policymaking authority to initiate and confirm multiple disciplinary actions, with the intended result to ultimately fill OFFICER JURDON'S file with disciplines in order to terminate him from the department and thereby perpetuate the hostile work environment that he and his fellow officer colleagues perpetrated, CHIEF OF POLICE reasonably subjected the CITY OF HANFORD to liability under § 1983.

61.     Both the inactions of the CITY OF HANFORD, as well as the affirmative actions and conduct of CHIEF OF POLICE SEVER, which separately and cumulatively impose liability upon the CITY OF HANFORD and/or the HANFORD POLICE DEPARTMENT, have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment and emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

        Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

### FOURTH CAUSE OF ACTION
**Employment Discrimination**
**In Violation of 42 U.S.C. § 1981**

(Against City of Hanford, Hanford Police Department, Chief of Police Sever)

62.     OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

63.     At all relevant times, OFFICER JURDON was a party to an employment contract with Defendants, CITY OF HANFORD and the HANFORD POLICE DEPARTMENT but Defendants converted that contract into a situation resulting in Defendants' discrimination against OFFICER JURDON which violated the rights afforded him by the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991, which affirmatively provides protection against racial discrimination in private employment.

FIRST AMENDED COMPLAINT FOR DAMAGES
16

64.     On account of the conduct described above, namely the racist meme whereby OFFICER JURDON'S face had been photo-shopped on the body of Derek Chauvin's body while he was choking George Floyd to death and circulated around the department as a joke, Defendants' CITY OF HANFORD, HANFORD POLICE DEPARTMENT, and CHIEF OF POLICE SEVER, as supervisor and final policymaker, have intentionally deprived OFFICER JURDON of rights enjoyed by his fellow employees of the HANFORD POLICE DEPARTMENT, including but not limited to the right to make and enforce contracts as guaranteed by 42 U.S.C. §1981.

65.     As a result of the above racial and discriminatory animus directed at OFFICER JURDON with respect to his employment with the CITY OF HANFORD and/or the HANFORD POLICE DEPARTMENT  that was in patent violation of §1981, OFFICER JURDON has been repeatedly and unfairly disciplined and allowed to thrive in a workplace free of racial animus, retaliation and other forms of discrimination and on account thereof, have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorneys' fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment and emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

**FIFTH CAUSE OF ACTION**
**Disparate Treatment in Violation of Title VII of the Civil Rights Act**
**2 U.S.C. § 2000e, et seq.**

(Against City of Hanford and Hanford Police Department)

66.     OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing Paragraphs as if fully set forth herein.

67.     Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "'Disparate

FIRST AMENDED COMPLAINT FOR DAMAGES

treatment' is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, or sex.

68.     As a fellow Caucasian police officer in the predominately Caucasian HANFORD POLICE DEPARTMENT,  OFFICER JURDON was expected to turn a blind eye to the use of excessive force upon the citizenry, the misdeeds of fellow officers and the racial discrimination prevalent in the department. By speaking out against these things, OFFICER JURDON was subjected to terms and conditions of his employment, i.e., disciplinary actions, internal investigations, targeted enforcement of the Department's rules and regulations, and demotion that were more restrictive, less favorable, and disparately enforced and investigated then the terms and conditions of employment enjoyed by similarly, and situated employees of the CITY OF HANFORD and the HANFORD POLICE DEPARTMENT.

69.     The actions and conduct of the employees, supervisors, and managing agents of OFFICER JURDON's employer, the CITY OF HANFORD and HANFORD POLICE DEPARTMENT, have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment and emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

**SIXTH CAUSE OF ACTION**
**Retaliation in violation of**
**Title VII of the Civil Rights Act**
**2 U.S.C. § 2000e, et seq.**
(Against City of Hanford and Hanford Police Department)

70.     OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

71.     Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [he] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

FIRST AMENDED COMPLAINT FOR DAMAGES
18

72.    OFFICER JURDON levied complaints with the CITY OF HANFORD and the HANFORD POLICE DEPARTMENT opposing the CITY OF HANFORD and the HANFORD POLICE DEPARTMENT's unlawful, discriminatory employment practices based upon OFFICER JURDON'S face being photo-shopped upon Derek Chauvin's body and the use of excessive force against the citizenry, along with complaints for vulgar and sexist language used by Sgt. Jimenez and unprofessional conduct by Cpt. Anderson. In addition, the HANFORD POLICE DEPARTMENT chief of police was (is) Defendant SEVER, who was personally involved with perpetuating such discriminatory, hostile, and retaliatory employment practices as specifically alleged above.

73.    As a result of OFFICER JURDON's complaints, as well as Defendant SEVER's personal participation and thereby a threat to his position and authority, Defendant CITY OF HANFORD and its agents and employees or supervisors took materially adverse actions against OFFICER JURDON. These actions included but are not limited to the filing of baseless internal investigations, making adverse findings regarding those investigations and requisitioning of disciplinary measures.

74.    The CITY OF HANFORD and the HANFORD POLICE DEPARTMENT's adverse actions constituted retaliatory workplace harassment in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, et seq, as well as said retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

75.    As a direct, foreseeable, and proximate result of Defendant's retaliatory actions and conduct of the CITY OF HANFORD, the HANFORD POLICE DEPARTMENT, its employees, supervisory staff, and managing agents have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment and emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES

19

**STATE CLAIMS**

**SEVENTH CAUSE OF ACTION**
**Failure to Prevent Race Discrimination**
**Cal. Gov't Code §12940(k)**
(Against City of Hanford and Hanford Police Department)

76.    OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

77.    At all times mentioned herein, California Government Code section 12940 *et seq.* was in full force and binding on Defendants CITY OF HANFORD, HANFORD POLICE DEPARTMENT, and CHIEF OF POLICE SEVER. This section provides that it is unlawful for a Defendant, as an employer, to fail to take all reasonable steps necessary to prevent race discrimination from occurring.

78.    At all times relevant herein, OFFICER JURDON was an employee of Defendants.

79.    OFFICER JURDON was subjected to racially charged discrimination himself and forced to witness such behavior directed against another African American officer, Jason Stingley, as set forth herein. OFFICER JURDON was also subjected to retaliation based on his complaints levied to Defendants as to the racial and discriminatory animus and hostility in which he incurred while in the course of his employment with the HANFORD POLICE DEPARTMENT. OFFICER JURDON complained about being subjected to such retaliation.

80.    Defendants' CITY OF HANFORD, HANFORD POLICE DEPARTMENT, and CHIEF OF POLICE SEVER failed to take all reasonable steps to prevent discrimination and/or retaliation from occurring in the workplace.

81.    As a direct, foreseeable, and proximate result of Defendant's the retaliatory actions and conduct of the CITY OF HANFORD, the HANFORD POLICE DEPARTMENT, CHIEF OF POLICE SEVER and its employees, supervisory staff, and managing agents have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment, emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

FIRST AMENDED COMPLAINT FOR DAMAGES
20

82.    In addition to such other damages as may properly be recovered herein, Plaintiff is entitled to recover prevailing party attorney's fees, pursuant to Cal. Gov't Code § 12965.

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

### EIGHTH CAUSE OF ACTION
**Hostile Work Environment in Violation of
Cal. Gov't Code §12940(J)(1)**

(Against City of Hanford, Hanford Police Department)

83.    OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

84.    Under FEHA, it is unlawful for an employer to harass any employee based on race.

85.    To establish a prima facie case of harassment, plaintiff must show that she was subject to a hostile work environment based on her race, and that the harassment was sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment.

86.    Harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.

87.    At all times mentioned herein, California Government Code section 12940 *et seq.* was in full force and binding on Defendants CITY OF HANFORD and HANFORD POLICE DEPARTMENT, as an employer.

88.    At all times relevant herein, OFFICER JURDON was an employee of Defendants CITY OF HANFORD and HANFORD POLICE DEPARTMENT.

89.    Defendants CITY OF HANFORD, HANFORD POLICE DEPARTMENT, and CHIEF OF POLICE SEVER were aware and apprised of the hostility that was directed at OFFICER JURDON but, instead of addressing and responding to its unfolding, chose to ratify its intended result of forcing OFFICER JURDON to endure unrelenting disciplinary actions and retaliation. This intended result was more than substantiated on account of the unequivocally discriminatory conduct displayed, expressed, and ratified by the CHIEF OF POLICE SEVER. As such, the racially hostile work environment witnessed by and directed at OFFICER JURDON took the form of direct expressions of

FIRST AMENDED COMPLAINT FOR DAMAGES

racially hostile memes, sham and pretextual investigations, unsubstantiated findings, disciplinary actions, and retaliation.

90.     As such, the hostility was so sufficiently pervasive as to irreparably alter the conditions of employment such that OFFICER JURDON, in order to safeguard his life and property.

91.     OFFICER JURDON believes and thereon alleges that his complaints about the use of excessive force by a fellow officer, complaints about the racially motivated meme whereby his face was photo-shopped onto Derek Chauvin's body during the murder of George Floyd, complaints about the sexually explicit and vulgar language by Sgt. Jimenez and complaints about Lt. Anderson's unprofessional behavior are the substantial motivation for the Caucasian officers of the HANFORD POLICE DEPARTMENT, including CHIEF OF POLICE SEVER, to engage in purposeful and intended conduct to create a hostile work environment in order to drive OFFICER JURDON from their ranks.

92.     As a direct, foreseeable, and proximate result of Defendants' Sever, Jimenez, Lutz, Anderson, Edlund and Does 1-50 racially hostile conduct directed at OFFICER JURDON, as well as other African American officers, the  CITY OF HANFORD and the HANFORD POLICE DEPARTMENT, including its supervisory staff and managing agents' ratification thereof on account of nonfeasance in taking action to stem such abhorrently despicable and unconstitutional conduct, OFFICER JURDON was caused to sustain substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment, emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

93.     In addition to such other damages as may properly be recovered herein, Plaintiff is entitled to recover prevailing party attorney's fees, pursuant to Cal. Gov't Code § 12965.

        Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

//

//

**NINTH CAUSE OF ACTION**
**Retaliation in violation of**
**Cal. Gov't Code § 1102.5(b)**
(Against City of Hanford, Hanford Police Department,

Chief of Police Sever)

94.     OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

95.     At all times relevant herein, OFFICER JURDON was an employee of the Defendant CITY OF HANFORD and/or HANFORD POLICE DEPARTMENT.

96.     OFFICER JURDON disclosed information to CITY OF HANFORD and/or HANFORD POLICE DEPARTMENT, through his supervisors and management, that he reasonably believed constituted a violation of the Fair Employment and Housing Act, the United States Constitution, and other laws, as stated herein.

97.     OFFICER JURDON has reasonable cause to believe that he disclosed information that expressly reflected Defendants' noncompliance with and/or violation of the Fair Employment and Housing Act and the United States Constitution.

98.     OFFICER JURDON was subjected to a concerted campaign of racial and discriminatory animus in the workplace, causing a derisively hostile environment resulting in enduring sham and pretextual internal investigations and disciplinary demerits.

99.     OFFICER JURDON disclosure of such information was a substantial motivating factor in Defendants' decision to discriminate and retaliate against him in the terms and conditions of his employment.

100.    As a direct, foreseeable, and proximate result of Defendant's the retaliatory actions and conduct of the CITY OF HANFORD, the HANFORD POLICE DEPARTMENT, its employees, supervisory staff, and managing agents have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment,

emotional distress, and mental and physical pain and anguish, all to his damage in an amount according to proof.

101.    In addition to other such damages as may properly be recovered herein, Plaintiff is entitled to recover prevailing party attorney's fees pursuant to Labor Code section 1102.5(j).

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

### TENTH CAUSE OF ACTION
**Violation of California Government Code § 8547**
**Whistleblower Protection Act**

(Against City of Hanford, Hanford Police Department)

102.    OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

103.    The "California Whistleblower Protection Act, California Government Code section 8547 et seq. provides: "The Legislature finds and declares that state employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution. The Legislature further finds and declares that public servants best serve the citizenry when they can be candid and honest without reservation in conducting the people's business"

104.    "Any person who intentionally engages in acts of reprisal, retaliation, threat, coercion, or similar acts against a state employee… for having made a protected disclosure, is subject to fine not to exceed ten thousand dollars…". Section 8547.8(b)

105.    OFFICER JURDON was at all times considered a state employee who exercised his right to voice concerns regarding the racial and discriminatory animus he was incurring, as well as the unlawful use of force being employed against the citizenry. The CITY OF HANFORD and the HANFORD POLICE DEPARTMENT's decision effectuate sham and pretextual internal investigations, as well as the imposition of disciplinary awards that were undertaken in temporal proximity to his having levied complaints with the CITY OF HANFORD and the HANFORD POLICE DEPARTMENT, were patently retaliatory acts in violation of California Whistleblower's Protection Act. Gov. Code. § 8547, et seq.

106.    As a direct, foreseeable, and proximate result of Defendant's the retaliatory actions and conduct of the CITY OF HANFORD, the HANFORD POLICE DEPARTMENT, CHIEF OF POLICE SEVER and its employees, supervisory staff, and managing agents have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment, emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

## ELEVENTH CAUSE OF ACTION
### Interference with Rights Secured by Constitution and Laws
### in Violation of California Civil Code 52.1 (Bane Act)
(Against City of Hanford, Hanford Police Department, Chief of Police Sever,
Davis, Huddleston, and Does 1-50)

107.    OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

108.    California Civil Code 52.1 provides:

> Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (b), may institute and prosecute in their own name and on their own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

109.    OFFICER JURDON exercised his constitutional rights to free speech and the protection thereby provided by federal and state statutes when he disclosed the unlawful and discriminatory conduct that he had incurred at the hands of Defendants. As such, OFFICER JURDON is therefore protected by Civil Code 52.1 from interference or attempted interference of the exercise of those constitutional rights.

110.    DEFENDANTS interfered and/or attempted to interfere with OFFICER JURDON'S constitutional and statutory rights, including but not limited to the right to be free from racial discrimination, unlawful retaliation, and the right to exercise his free speech.

111.    OFFICER JURDON reasonably believed that if he exercised his right to be free from racial discrimination and free speech that DEFENDANTS would take action against him and his property rights in order to prevent him from exercising these rights or retaliate against him for having exercised said rights.

112.    As a direct result of exercising his right to free speech, DEFENDANTS retaliated against him by subjecting him to a concerted campaign of racial and discriminatory animus in the workplace, causing a derisively hostile environment that resulted in his having to endure sham and pretextual internal investigations and disciplinary demerits.

113.    DEFENDANTS' various acts of reprisal, retaliation, and restraint against OFFICER JURDON created a chilling effect on his legitimate speech by creating fear, hesitation, hostility on account of exercising future speech.

114.    In undertaking the conduct alleged herein, DEFENDANTS, and each of them violated the rights of OFFICER JURDON under the First and Fourteenth Amendments of the US Constitution and the FEHA statutes under California law.

115.    Specifically, DEFENDANTS have taken the aforementioned actions against OFFICER JURDON in direct response to JURDON'S race, being Caucasian and expected to tow-the-line with other Caucasian members of the department in their blatant racially discriminatory practices and illegal use of force against the citizenry, and in violation of equal protection, as well as in retaliation for, and in response to JURDON exercising his protected speech. The acts and omissions of Defendants, and each of them, were done by Defendants under color of state law in their capacity as a municipality chartered under state law, and as policy-making authorities to which the CITY OF HANFORD delegated its governing powers in the areas in which these policies were promulgated or decisions taken or customs or practices followed.

116.    The acts and omissions described above were taken by Defendant CITY OF HANFORD'S official policymakers as members charged with such responsibility. It was or should have been plainly

obvious to any reasonable policymaking official of the CITY OF HANFORD that the acts and omissions of Defendants as alleged herein directly violated and continued to violate OFFICER JURDON'S clearly established constitutional and statutory rights.

117.     As a direct, foreseeable, and proximate result of Defendant's the retaliatory actions and conduct of the CITY OF HANFORD, the HANFORD POLICE DEPARTMENT, its employees, supervisory staff, and managing agents, as well as Defendants' Sever, Jimenez, Lutz, Anderson, Edlund and Does 1-50 have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorney's fees, medical expenses, loss of future earnings and benefits, costs of suit, humiliation, embarrassment, emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

## TWELFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

(Against Sever, Jimenez, Lutz, Anderson, Edlund and Does 1-50)

118.     OFFICER JURDON hereby re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

119.     Defendants Sever, Jimenez, Lutz, Anderson, Edlund and Does 1-50's intentional, willful, and malicious conduct as herein alleged, i.e., a concerted campaign of hostility founded upon racial and discriminatory animus undertaken with ill will and intent to injure OFFICER JURDON was extreme and outrageous and is outside of any accepted worldviews held in the 21st Century and thus, is intolerable in a 'civilized society.'

120.     As a direct, foreseeable, and proximate result of the extreme and despicable conduct of the employees of the CITY OF HANFORD and the HANFORD POLICE DEPARTMENT, in particular, Defendants' Sever, Jimenez, Lutz, Anderson, Edlund and Does 1-50, said Defendants' have caused and continue to cause OFFICER JURDON substantial losses in earnings, significant loss of reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages and pension benefits, attorneys' fees, medical expenses, loss of future earnings and benefits, costs of

suit, humiliation, embarrassment, emotional distress and mental and physical pain and anguish, all to his damage in an amount according to proof.

Wherefore, OFFICER JURDON prays for judgment as more fully set forth below.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff PATRICK JURDON prays for judgment against Defendants and each of them as follows:

1.    For general damages including pain, mental and emotional distress, fear, humiliation, damage to career, damage to self-image, spiritual injury and suffering in an amount of $12,000,000 or according to proof;

2.    For special damages in an amount according to proof;

3.    For prejudgment and post-judgment interest in an amount according to proof;

4.    For reasonable attorney's fees and cost of suit therein;

5.    For punitive damages against the individual Defendants only in the amount of $3,000,000 as to each Defendant, or according to proof of the net worth of each Defendant;

6.    For statutory penalties and any other statutory relief;

7.    For such other and further relief as the court may deem proper;

8.    PATRICK JURDON hereby demands a trial by jury.

**JURY TRIAL DEMANDED.**

DATED: January 30, 2024                    **LAW OFFICES OF BONNER & BONNER**


                                           */s/ Charles A. Bonner*
                                           CHARLES A. BONNER
                                           Counsel for Plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES
28